**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | : | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| DEBORAH A. RECHEIRT and | : | |
| STEPHEN J. REICHERT, | : | |
| | : | Case No. 19-12484 (AMC) |
| | : | |
| Debtors. | : | |
| | : | |

**DEBTORS' COMBINED MOTION (1) PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE (A) APPROVING AN ASSET SALE AGREEMENT AND AUTHORIZING THE SALE OF THE DEBTORS' PROPERTY LOCATED AT 122 E. 3rd STREET, POTTSTOWN, PA OUTSIDE THE ORDINARY COURSE OF BUSINESS, (B) AUTHORIZING THE SALE OF SAID PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, AND (2) AVOIDING CERTAIN LIENS UNDER SECTION 506 OF THE BANKRUPTCY CODE**

Deborah and Stephen Reichert, as debtors-in-possession (the "Debtors"), hereby request the entry of an order, pursuant to Sections 105(a) and 363(b), (f), (m) of the United States Bankruptcy Code (the "Bankruptcy Code"), and Bankruptcy Rule 6004, (i) approving that certain Standard Agreement for the Sale of Real Estate by and between the Debtors, as seller, and Paula Bickelman, as buyer (the "Purchaser"), a true and correct copy of which, as amended from time to time, is attached hereto and incorporated herein by reference as Exhibit "A" (the "Agreement") and authorizing the sale of the Debtors' property located at 122 E. 3rd Street, Pottstown, PA 19464 (the "Property") outside of the ordinary course of business to the Purchaser, (ii) authorizing the sale of the Property free and clear of all liens, claims, encumbrances and interests, and (iii) avoiding certain liens pursuant to Bankruptcy Code Sections 506, and, in support of the Motion, the Debtors state as follows:

### *Introduction And Background*

1. On April 17, 2019, the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code and since that date have owned their property as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2. No official committee of creditors has been appointed or designated.

3. The Debtors purchased the Property in 2005 with the intent to rent it to third parties, which the Debtors did until in or around 2009.

4. To finance their purchase of the Property, on or about August 29, 2005, the Debtors obtained a mortgage loan from MERS, Inc. as nominee for GreenPoint Mortgage Funding, Inc. in the original principal amount of $162,400 (the "First Mortgage"). On or about January 18, 2012, MERS, Inc. assigned the First Mortgage to Wells Fargo Bank, National Association as Trustee for the Certificate Holders of Structured Asset Mortgage Investments II, Inc., GreenPoint MTA Trust 2005-AR5, Mortgage Pass-Through Certificates, Series 2005-AR5.

5. By 2009, the Debtors were unable to service the obligations associated with the Property, including on account of the First Mortgage, or otherwise maintain the Property, the value of which was less than the amounts owing on account of the mortgage obligations and other obligations encumbering the Property.

6. On August 30, 2011, Debtor, Stephen Reichert, filed an individual voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court at case number 11-16721. Mr. Reichert scheduled the Property with a value of $160,000 as well as the lien of the First Mortgage, which, according to Mr. Reichert's credit report, was being serviced by "EMC Mortgage/Chase" at the time, with a claim amount of $153,592.

7. Given that the Debtors were no longer renting the Property and no longer making mortgage payments, Mr. Reichert indicated his intention to "surrender" the Property in his chapter 7 case.

8. On December 28, 2011, this Court entered an Order of Discharge discharging Mr. Reichert of all of his dischargeable debts.

9. On December 5, 2012, the holder of the First Mortgage commenced a mortgage foreclosure action against the Property and thereafter obtained a default judgment in the amount of $199,317.09.

10. On April 12, 2013, Debtor, Deborah Reichert, filed an individual voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court at case number 13-13240. Mrs. Reichert scheduled the Property with a value of $160,000 as well as the lien of the First Mortgage, which, according to Mrs. Reichert's credit report, was being serviced by "Chase" at the time, with a claim amount of $153,592.

11. Similar to Mr. Reichert, Mrs. Reichert indicated her intention to "surrender" the Property in her chapter 7 case.

12. On August 27, 2013, this Court entered an Order of Discharge discharging Mrs. Reichert of all of her dischargeable debts.

13. On November 18, 2013, the Debtors commenced a joint chapter 13 bankruptcy case in this Court at case number 13-20063. In connection therewith, the holder of the First Mortgage filed a proof of claim in the amount of $215,336.84, with arrearages in the amount of $74,498.59. A true and correct copy of that proof of claim is attached hereto and incorporated herein by reference as Exhibit "B". The Debtors' foregoing chapter 13 case was subsequently dismissed by this Court.

14. Since the property had not been occupied no later than prior to 2011, the Property's condition deteriorated significantly as a result of, among other things, water leaks and the absence of any maintenance or upkeep over the years.

15. The Debtors never contested the mortgage foreclosure case involving the Property and, indeed, not only cooperated with, but implored, the holder of the First Mortgage to foreclose on the Property to transfer title out of the name of the Debtors.

16. When the Debtors filed the within case, they valued the Property at $132,572 based upon valuation sources at their disposal.

17. As of the Petition Date, the Debtors believe that the Property had no equity and therefore were prepared to surrender it to the holder of the First Mortgage. Indeed, over the years, the Property's condition had deteriorated significantly and, thus, became uninhabitable and unrentable.

18. Nevertheless, on May 11, 2020, which was after the Petition Date, the holder of the First Mortgage recorded a satisfaction of the mortgage, a true and correct copy of which is attached hereto and incorporated herein by reference as Exhibit "C".

19. Thereafter, the Debtors were able to find a buyer of the Property, which is the sale transaction that the Debtors are seeking approval of herein and which contemplates a sale price of $125,000 (with an anticipated $5,000 credit for the buyer). In addition, the Purchaser has agreed to bear the full transfer taxes associated with the proposed sale as well as the commissions charged by the Purchaser's real estate agent.

20. The Debtors believe that the offer is reflective, if not better than, the fair market value of the Property and a more immediate sale will prevent the erosion of equity in the

Property through the further deterioration of the Property as well as the incurrence of ongoing charges and assessments against the Property.

### *Jurisdiction and Venue*

21.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K), (N) and (O).  Venue of the Debtors' case and this proceeding is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### *Summary of the Agreement*

22.  Pursuant to the Agreement, the Debtor will sell the Property to the Purchaser free and clear of all liens, claims, interests and encumbrances for the sum of $120,000 (the Agreement provides for a sale price of $125,000, but the Purchaser has requested, and the Debtors have agreed to a $5,000 credit).  As stated above, the Purchaser also is responsible for all transfer taxes associated with the sale.

23.  Although the Debtors do not yet have a draft settlement statement, the Purchaser has provided the Debtor with their title commitment, the relevant portion of which is attached hereto and incorporated herein as Exhibit "D" to show the expected obligations that will be paid from the sale transaction prior to a distribution to the Debtors, as sellers.

24.  The title report does make reference to the following mortgages, each of which the Debtors seek to avoid for the reasons more fully set forth *infra* (the "Avoidable Mortgages"):

   a.  Open-End Mortgage to MERS, Inc., as nominee for GreenPoint MortgageFunding, Inc., dated 08/29/2005, and recorded 09/14/2005, in the Montgomery County Recorder's Office at Mortgage Book 11583, Page 1873, in the maximum principal amount of $20,300.00.  According to the recorder's office, this mortgage was assigned to Deutsche Bank

National Trust Company As Indenture Trustee For Certificateholders of GSR Trust 2005-HEL-1, Mortgage-Backed Notes Series 2005-HEL1, recorded on 06/29/2012, in Mortgage Book 13346, Page 1754. The Debtors believe that this mortgage was or should have been satisfied; however, their investigation is ongoing.

      b.      Mortgage to CommunityBanks, dated 11/22/2006, and recorded 01/03/2007, in the Montgomery County Recorder's Office at Mortgage Book 11990, Page 2278, in the original principal amount of $484,000.00. Upon information and belief, the foregoing obligation, to the extent valid, is held or serviced by Truist Bank, which filed proofs of claim in the within case through its predecessor, BB&T, but have not asserted a lien on the Property. The absence of a secured claim as to the Property is consistent with the Debtors' belief that this mortgage should have been satisfied some time ago.

      c.      Open-End Mortgage to CommunityBanks, dated 11/22/2006, and recorded 01/03/2007, in the Montgomery County Recorder's Office at Mortgage Book 11990, Page 2292, in the maximum principal amount of $100,000.00. Upon information and belief, the foregoing obligation, to the extent valid, is held or serviced by Truist Bank, which filed proofs of claim in the within case through its predecessor, BB&T, but have not asserted a lien on the Property. The absence of a secured claim as to the Property is consistent with the Debtors' belief that this mortgage should have been satisfied some time ago.

      d.      Mortgage to Nova Bank, dated 07/16/2010, and recorded 07/23/2010, in the Montgomery County Recorder's Office at Mortgage Book 12875, Page 655, in the original principal amount of $50,000.00. Upon information and belief, the foregoing obligation, to the extent valid, is held or serviced by Real Time Resolutions, which filed proofs of claim in the within case, but have not asserted a lien on the Property. The absence of a secured claim as to

the Property is consistent with the Debtors' belief that this mortgage should have been satisfied some time ago.

25. The Debtors negotiated the transaction contemplated by the Agreement at arm's length and in good faith. The Debtors believe that the consideration to be received in the Agreement is at or above the fair market value of the Property and is otherwise in the best interests of the estate. Indeed, if the sale is not consummated, the Debtors run the risk that the Property would be lost at a judicial sale, which would eviscerate the Debtors' equity therein.

26. The Debtors believe that a procedure to solicit higher and better offers is both impractical and unnecessary under the current circumstances given that this is a private sale transaction with respect to a property that was under foreclosure and has otherwise sat idle for years.

### *The Section 363 Sale of the Property*

27. Pursuant to section 363(b)(1) of the Bankruptcy Code, the Debtors, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Furthermore, Section 105(a) of the Bankruptcy Code authorizes bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

28. A proposed sale of property pursuant to Section 363(b) of the Bankruptcy Code is proper if the bankruptcy court finds that the Debtors have exercised his reasonable business judgment. See Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063 (2d Cir. 1983).

29. The business judgment test involves four factors: (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration is

provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided. Id. at 1071.

### (i) *The Property Sale Is In the Debtor's Sound Business Judgment*

30. The sale of the Property is within the Debtors' sound business judgment primarily because the Debtors do not use the Property as their residence and it has been uninhabitable for a number of years.

31. Accordingly, the continued retention of the Property provides no benefit to the Debtors' estate, but instead, is nothing more than an unnecessary liability.

32. Furthermore, the sale of the Property will result in addressing and retiring obligations encumbering the Property, eliminating potential ongoing liabilities associated with the Property as well as provide a return of equity to the Debtors, which they will use to fund their plan of reorganization.

### (ii) *The Consideration Offered Is Fair And Reasonable*

33. The Debtors submit that the consideration for the Property as set forth in the Agreement will provide fair and reasonable consideration to the Debtors' estate.

34. As stated supra, the Property has sat vacant for a number of years, which has caused it to deteriorate in value and ultimately to become unhabitable.

### (iii) *Transaction Proposed and Negotiated in Good Faith*

35. The Debtors have no relationship to or with the Purchaser, and the Debtors negotiated the terms and conditions of the Agreement through the Purchaser's Broker at arm's length. The Agreement is set forth in the commonly recognized Pennsylvania form for the sale of residential real estate, and the Debtors believe that the terms thereof are standard and customary for transactions along these lines.

### *(iv) Adequate and Reasonable Notice Of The Sale Is Being Provided*

36. The Debtors submit that the standard track notice procedure being used by the Debtors is both adequate and reasonable given the condition of the Property.

### *The Proposed Transaction Is Not A Sub Rosa Plan*

37. The transaction contemplated by the Agreement is not a sub rosa plan. The Debtors are not proposing to adjust any rights of creditors. Instead, the Debtors are merely attempting to effectuate a time-sensitive transaction as a means of realizing the value of the Property, with valid liens on the Property to be paid from the sale proceeds in their relative order of priority.

38. The Debtors' remaining creditors will receive treatment consistent with the Debtors' proposed plan from the Debtors' disposable income.

### *The Asset Sale Satisfies The Requirements of Section 363(f)*

39. Under Bankruptcy Code Section 363(f), a debtor-in-possession may sell property free and clear of any lien, claim or interest in such property if one of the following conditions is satisfied: "(1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which property is sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.".

40. In other words, if the Debtors meet any one of the foregoing criteria, a sale free and clear of all liens, claims or interests is permissible.

41. Here, the Debtors believe that all creditors with a valid and binding lien on the Property will be (a) paid in full; (b) have otherwise agreed or will agree to accept their proposed

treatment based upon both the proceeds available from the sale and the relative priority of their respective lien positions or (c) have an interest that is capable of being partially or fully divested in connection with this sale.

42. Accordingly, the Debtors submit that the sale as presently structured satisfies the statutory prerequisites of Section 363(f) of the Bankruptcy Code.

### *Good Faith Purchaser Under Section 363(m) Of The Bankruptcy Code*

43. The Debtors request that the Court find that the Purchaser be entitled to the protections provided in Section 363(m) of the Bankruptcy Code, namely that

> the reversal or modification on appeal of an authorization . . . of a sale . . . does not affect the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

44. Lack of good faith includes evidence of "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders." In re Abbots Dairies of Penn., Inc., 788 F.2d 143, 147 (3d Cir. 1986).

45. Here, the sale is being proposed in good faith, without fraud or collusion. The Debtors and Purchaser have no relationship (other than as set forth in the Agreement) and negotiated the Agreement at arm's length.

46. All of the terms and conditions involving the sale are set forth in the Agreement and there is no side or ancillary agreement or understandings between the Debtors and Purchaser not otherwise reflected in the Agreement.

47. Furthermore, the Debtors will have no ongoing rights or interests in the Property post-sale.

### *The Avoidance of Certain Liens*

48. As noted above, each Debtor obtained a discharge subsequent to the incurrence of the debts associated with the Avoidable Mortgages. Accordingly, as of the Petition Date, the holders of the Avoidable Mortgages had, if anything, only an in rem claim against the Property.

49. Also as set forth above, the value of the Property as of the Petition Date was less than the balance owing on account of the First Mortgage. As a result, each and every one of the Avoidable Mortgages was wholly unsecured as of the Petition Date under 11 U.S.C. § 506, which means that those parties have no claim by virtue of the Debtors' discharge.

50. In addition to the above legal conclusion as to why the Avoidable Mortgages should be avoided in this case, the Debtors believe that all of the Avoidable Mortgages have been paid or otherwise should have been satisfied in advance of the within case.

51. Accordingly, legally and factually, the Avoidable Mortgages should be avoided by this Court.

WHEREFORE, the Debtors respectfully request the entry of an Order, in the form attached, granting the relief set forth in this Motion and any other and further relief as is just under the circumstances.

Respectfully submitted,

SMITH KANE HOLMAN, LLC

Date: June 25, 2021

By: /s/David B. Smith
David B. Smith, Esquire
112 Moores Road, Suite 300
Malvern, PA 19355
Tel: (610) 407-7217
Fax: (610) 407-7218
dsmith@skhlaw.com
Counsel to the Debtors