# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| DEBORAH REICHERT and | : | Bky. No. 19-12484 (AMC) |
| STEPHEN REICHERT, | : | |
| | : | |
| Debtors. | : | |

## DEBTORS' MOTION FOR AN ORDER FINDING GSR MORTGAGE LOAN TRUST 2005-AR7 AND ITS AGENTS IN CONTEMPT OF COURT FOR REFUSING TO OBEY THE COURT'S OCTOBER 13, 2023 ORDER REGARDING MONTHLY MORTGAGE PAYMENTS, AND FOR THE IMPOSITION OF SANCTIONS

Deborah and Stephen Reichert ("Debtors"), by and through their attorneys, Smith Kane Holman, LLC, hereby move for an order finding GSR Mortgage Loan Trust 2005-AR7, U.S. Bank National Association, As Trustee ("GSR") and its agents, Specialized Loan Servicing, LLC and Shellpoint Mortgage Servicing, in contempt of this Court's Order dated October 13, 2023 (*Dkt. No. 305*), which determined that the Debtors' monthly mortgage payments to GSR under the Plan were $5,390.21; and for the imposition of sanctions. In support of this Motion, the Debtors aver as follows:

### Jurisdiction & Venue

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relevant Background**

4. The Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on April 17, 2019 (the "Petition Date") and have continued in possession of their property as debtors-in-possession pursuant to 11 U.S.C §§ 1107(a) and 1108.

5. On June 25, 2019, GSR filed a secured proof of claim in the Debtors' case, at Claim No. 12 (the "GSR Claim"), based on a loan secured by a mortgage on the Debtors' residence.

6. By Order dated May 2, 2022, the Court confirmed the Debtors' Second Amended Chapter 11 Plan of Reorganization (the "Plan"), which became effective on May 17, 2022 pursuant to its terms. See Dkt. Nos. 257, 261.

7. Section 4.1 of the Plan set forth the treatment of GSR's Claim, which provided full payment of GSR's secured claim over a 30-year term at 3.5% interest.

8. The Plan treatment for GSR's Claim also included interim provisional monthly payments in the amount of $5,639.56, a reservation of rights for Debtors' dispute regarding certain aspects of the GSR Claim, and a mechanism for adjusting the monthly payments once the Debtor's dispute had been resolved.

9. The Debtors ultimately objected to GSR's Claim, and the Debtors and GSR resolved the claim objection by stipulation, which the Court approved on April 5, 2023 (the "Stipulation"). See Dkt. No. 287.

10. The Stipulation provided that the balance of GSR's Claim under the Plan would be reduced by $55,530—from $1,255.902.77 to $1,200,372.77.

11. Subsequent to the entry to the Stipulation, the Debtors sought from GSR a consensual adjustment of their monthly payment in accord with the Plan's treatment of the GSR Claim: full payment of the allowed secured claim over a 30-year term at 3.5% interest.

12. Based on the then-reduced claim amount of $1,200,372.77, the Debtors' monthly mortgage payments to GSR should have been $5,390.21.

13. GSR refused to accept the Debtor's interpretation of the Plan, maintaining that the monthly mortgage payments should be $5,639.56, which was the provisional and unadjusted monthly mortgage payment set forth in the Plan.

14. On July 21, 2023, the Debtors filed a Motion to Enforce the Confirmed Plan (the "Motion to Enforce"), seeking a judicial determination that the monthly payment to GSR under the Plan should be $5,390.21.

15. GSR objected to the Motion to Enforce, arguing that the Plan required monthly mortgage payments in the amount of $5,639.56.

16. Following a hearing on September 26, 2023, this Court entered an Order on October 13, 2023, which granted the Motion to Enforce (the "Enforcement Order"). See *Dkt. No. 305*. A true and correct copy of the Enforcement Order is attached hereto as Exhibit A.

17. In relevant part, the Enforcement Order specified that: "In accordance with Section 4.1(b) of the Plan, the Debtors' monthly payment on account of GSR's Claim **shall be $5,390.21**, which is the amortized monthly payment of $1,200,372.77 over thirty years at a fixed interest annual rate of 3.5%." See Enforcement Order at 1 (emphasis added).

18. Following entry of the Enforcement Order, on November 21, 2023, GSR's mortgage servicer, Specialized Loan Servicing, LLC ("SLS"), issued a notice to the Debtors

3

asserting that their mortgage was an adjustable-rate mortgage and that, beginning in January 2024, their mortgage interest rate and monthly mortgage payments were increasing to 6.875% and $7,855.14, respectively. A true and correct copy of this November 21, 2023 notice is attached hereto as <u>Exhibit B</u>.

19. In December 2023, SLS also began issuing mortgage statements to the Debtors indicating their regular monthly payments were $5,639.56. True and correct copies of mortgage statements issued by SLS (and its successor, Shellpoint Mortgage Servicing ("Shellpoint")[1]) to the Debtors are attached hereto as <u>Exhibit C</u>.

20. Tellingly, and in flat disregard for the Enforcement Order just entered, $5,639.56 is the amount that GSR had advocated for as being the amount that should be owing under the Plan—which argument this Court had explicitly rejected.

21. From December 2023 to the present, SLS and Shellpoint have continued to issue statements to the Debtors falsely asserting that they owe monthly mortgage payments in the amount of $5,639.56. <u>See</u> Exhibit C.

22. The Debtors and the Debtors' counsel have repeatedly reached out to GSR and its agents, SLS and Shellpoint, to have the Debtors' monthly mortgage payment corrected, but to no avail.

23. Shortly after the entry of the Enforcement Order, the Debtors' counsel emailed Counsel for GSR and SLS, Keri P. Ebeck, raising concerns that SLS's mailed statements to the Debtors were inconsistent with the Enforcement Order. Ms. Ebeck informed the undersigned

---

[1] <u>See</u> https://www.shellpointmtg.com/sls/.

that "SLS had closed their file on [her] end."  No replacement counsel was indicated and none have entered an appearance in the Debtors' case.

24. Debtors' counsel has also called multiple times and left voicemail messages with MDK Legal, a law firm that had been retained to collect the amounts alleged to be owing under the GSR Claim and who had sent the Debtors a debt collection letter.[2]  MDK Legal has failed to respond to Debtors' counsel.

25. The Debtors too have repeatedly reached out to SLS and Shellpoint to have their payment brought into conformance with the Enforcement Order—even providing a copy of the Court's Enforcement Order to Shellpoint after Shellpoint began servicing the GSR mortgage in July 2024.

26. Despite these efforts, GSR and its agents have systematically ignored the communications of Debtors and Debtors' counsel and refused to bring the Debtors' mortgage payments into compliance with the Enforcement Order.

27. GSR's and its agents' refusal to comply with this Court's Enforcement Order has resulted in complete disruption of the Debtors' mortgage payments.

28. The Debtors have received numerous notifications that they are behind on their payments, despite having timely mailed monthly payments in the amounts specified by the Court.[3]

---

[2] A true and correct copy of the MDK Legal collection letter dated January 10, 2025, is attached hereto as Exhibit D.
[3] SLS and Shellpoint have denied the Debtors the ability to make their mortgage payments online, forcing the Debtors to mail checks every month, many of which have not been timely cashed or have not been cashed at all.  At times and without any explanation as to why their checks were not being deposited, the Debtors have gone so far as canceling mailed checks and mailing replacement checks.

5

29. Since August 2024, due to SLS and Shellpoint's failure to heed this Court's Enforcement Order, the Debtors have received debt collection notices, Act 91 notices, and loss mitigation notices. True and correct copies of a sample of these notices are attached hereto as <u>Exhibit E</u>.

30. Shellpoint has also recently begun to return the Debtors' mortgage payment checks, asserting that the loan is more than 90 days past due and is now showing in an active workout.

31. Having previously obtained relief from this Court regarding the mortgage payments required by the Plan, and with GSR and its mortgage servicers refusing to comply with this Court's Enforcement Order, the Debtors are forced to file yet another motion seeking to have the proper mortgage payments recognized and accepted by GSR and its agents.

## **Relief Requested**

32. The Debtors seek entry of an Order, in the form attached to this Motion, making the following findings and granting the following relief:

   a. Finding GSR and its agents, SLS and Shellpoint, to have willfully failed to comply with this Court's October 13, 2023 Enforcement Order, and therefore being in contempt of Court.

   b. Requiring GSR and its agents to rectify their noncompliance with the Enforcement Order, which shall include:

      i. issuing monthly mortgage statements showing regular monthly payments due in the proper amount of $5,390.21;

   ii. reconciling the Debtors' mortgage account consistent with the correct monthly mortgage payment amounts that have come due;

   iii. providing the Debtors with the amount required to bring their mortgage account current, without addition of any fees or charges for asserted late payments; and

   iv. restoring the Debtors' ability to make monthly mortgage payments online.

 c. Awarding compensatory damages to the Debtors as a remedy for contempt, in the following amounts:

   i. $2,500.00 for the fees and costs associated with the drafting and prosecution of this motion; and

   ii. the costs associated with filing this motion, including fees for reopening the Debtors' administratively closed chapter 11 case and any applicable U.S. Trustee chapter 11 fees.

### Basis for Relief

33. This Court may enforce its orders using the civil contempt authority. See, e.g., In re Meyers, 344 B.R. 61, 66 (Bankr. E.D. Pa. 2006) (after a finding of civil contempt, a bankruptcy court has the power to issue sanctions such as costs, compensatory damages and attorneys' fees) (citing cases); see also Quinter v. Volkswagen of Am., 676 F.2d 969, 974-75 (3d Cir. 1982).

34. Civil contempt sanctions are remedial in nature and will be imposed regardless of whether the offending party acted in good faith or without willfulness or a specific intent to violate a court order. In re Odom, 570 B.R. 718, 722 (Bankr. E.D. Pa. 2017).

35. A movant seeking a finding of civil contempt must establish, by clear and convincing evidence, that the other party violated a court order and that the party had knowledge of the order sufficient to put him on notice of the proscribed conduct. Id.

36. A court has broad discretion in fashioning an appropriate remedy for civil contempt, including a fine or in terrorem damages to coerce compliance with its orders, and compensatory damages such as attorney's fees and costs. See Marshak v. Treadwell, 595 F.3d 478, 494 (3d Cir. 2009); In re Bernhard, 639 B.R. 117, 129 (Bankr. E.D. Pa. 2022).

37. Here, there is no question that GSR and its agents, SLS and Shellpoint, had knowledge of this Court's Enforcement Order, as they opposed the Debtor's Motion to Enforce and the Court ruled against them in entering the Enforcement Order.

38. Likewise, GSR and its agents knew beyond any doubt from the express terms of the Enforcement Order that the monthly payment owed by the Debtor on account of the GSR Claim was $5,390.21.

39. GSR and its agents have refused to comply with the Court's Enforcement Order, have continued to demand payment from the Debtors in the amount of $5,639.56, and have systematically ignored attempts of the Debtors and Debtors' counsel to have the monthly mortgage payments brought into compliance with the Enforcement Order.

40. The collection actions of GSR and its agents are in direct defiance of the Enforcement Order and constitute civil contempt.

41. The Debtors posit that an appropriate remedy for civil contempt in this context is compensatory damages in the form of reimbursement of the costs and attorney's fees that the Debtors have incurred in order to remedy GSR's and its agents' noncompliance with the

Enforcement Order, including the costs of preparing and filing this motion, as well as any fees attendant to the reopening of the Debtor's administratively closed chapter 11 case for the filing of this motion.

42. The cost of securing relief that the Court has clearly granted, when a creditor has flagrantly ignored the Court's orders, should fall on the contemptuous creditor; forcing the Debtors to shoulder that cost here will only encourage creditors to ignore the Court's orders.

WHEREFORE, the Debtor respectfully requests that the Court issue an order, in the form attached, (1) finding GSR and its agents, SLS and Shellpoint, to have willfully failed to comply with the this Court's October 13, 2023 Enforcement Order, and therefore being in contempt of Court; (2) requiring GSR and its agents to rectify their noncompliance with the Enforcement Order; (3) granting compensatory damages to the Debtors as a remedy for contempt; and (4) granting such other and further relief as is just and proper.

Dated: March 24, 2025                    SMITH KANE HOLMAN, LLC

By: */s/ Nicholas M. Engel*
Nicholas M. Engel, Esquire
David B. Smith, Esquire
112 Moores Road, STE 300
Malvern, Pa 19355
(610) 407-7216
nengel@skhlaw.com
*Counsel for the Debtors*

9